IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00327-CMA-KLM

FRANKLYN A. JENKINS,

     Plaintiff,

v.

IMMEDIA, INC., a Minnesota corporation.

     Defendant.

_____

**ORDER**

_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Plaintiff's **Renewed Motion for Leave to Amend Complaint to Add a Claim for Punitive Damages and to Conform to the Court's Orders** [#353][1] (the "Motion"). Defendant filed a Response [#358] in opposition to the Motion and Plaintiff filed a Reply [#359]. The Motion is referred to the undersigned for disposition. *See* [#309].[2] The Court has reviewed the Motion, the Response, the Reply, and the applicable law, and is sufficiently advised in the premises. For the reasons set

---

[1] "[#353]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] A magistrate judge may issue orders on nondispositive motions only. *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1461, 1462-63 (10th Cir. 1988). Whether motions to amend are dispositive is an unsettled issue. *Chavez v. Hatterman*, No. 06-cv-02525-WYD-MEH, 2009 WL 82496, at *1 (D. Colo. Jan. 13, 2009) (collecting cases). When an order on a motion to amend removes or precludes a defense or claim from the case it may be dispositive. *Cuenca v. Univ. of Kan.*, 205 F. Supp. 2d 1226, 1228 (D. Kan. 2002). In this case the Court grants Plaintiff's request to amend his Second Amended Complaint to add a claim for punitive damages. Therefore, the Court assumes that the issue is nondispositive.

forth below, the Motion [#353] is **GRANTED**.

## I. Background

Plaintiff brings this action against Defendant for injuries sustained by Plaintiff on February 12, 2010, when he was unloading heavy printing equipment and steel lift tables purchased by Defendant from his truck. *See Order* [#268] at 1; *Sched. Order* [#288] at 6. Plaintiff also sued Defendants Duffy Crane and Hauling, Inc., Duffy Holdings, LLC and Duffy Crane, Inc. (the "Duffy Defendants"), whose employees allegedly contributed to the accident. Plaintiff resolved his claims against the Duffy Defendants and voluntarily dismissed those parties, effective February 5, 2018. *See* [#289 & #290]. In the Motion, Plaintiff seeks leave to amend his Second Amended Complaint [#134] to: (1) remove the Duffy Defendants as parties, (2) remove the claims against the Duffy Defendants, (3) remove the reference to Colorado statutory law in Plaintiff's ninth claim for relief (Joint and Several Liability), and (4) add a claim for punitive damages pursuant to Minn. Stat. §§ 549.20 and 549.191. [#353] at 1-3; *see Proposed Third. Am. Compl.* [#353-54].[3] Defendant only opposes the addition of a claim for punitive damages. *Motion* [#353] at 1; *see generally Response* [#358].

Plaintiff initially filed a Motion to Leave to Amend Complaint to Add a Claim for Punitive Damages [#307] (the "Initial Motion") on October 5, 2018. However, the proposed Third Amended Complaint that Plaintiff attached to the Initial Motion did not contain any of the new factual allegations on which his punitive damages claim is based. *See generally*

---

[3] The parties agree that Minnesota substantive law controls the claims in this case and thus, applies to Plaintiff's potential claim for punitive damages. *See Motion* [#353] at 3; *Response* [#358] at 2.

*Pl.'s Ex. 56* [#307-4].    Moreover, Plaintiff's Initial Motion did not comply with D.C.COLO.LCivR 15.1(b) in that Plaintiff failed to attach a red-lined version of the proposed Third Amended Complaint.  For these reasons, the Court denied the Initial Motion [#307] without prejudice and directed Plaintiff to file a renewed motion for leave to amend his complaint that corrected these deficiencies on or before February 13, 2019.  *See Minute Order* [#347].  Pursuant to the Court's Minute Order, Plaintiff timely filed the instant Motion [#353] on February 6, 2019, which attaches a proposed Third Amended Complaint [#353-54] that includes the relevant factual allegations and complies with D.C.COLO.LCivR 15.1(b).

In short, Plaintiff argues that the Court should permit the amendment to add a claim for punitive damages because the evidence uncovered from the recent completion of fact and expert discovery establishes prima facie proof that Plaintiff's injury was the product of Defendant's "deliberate disregard" for his safety.  *See* [#353] at 1-3.

In its Response, Defendant asserts two arguments for why the Court should deny the amendment.  *See generally* [#358].  First, Defendant argues that Plaintiff cannot present a prima facie case of clear and convincing evidence that Defendant acted with deliberate, intentional disregard pursuant to Minn. Stat. § 549.20.  *Id.* at 2-12.  Second, Defendant argues that Plaintiff's Motion [#353] is untimely and not supported by good cause, and that Defendant would be unfairly prejudiced by the amendment.  *Id.* at 12-15.

In his Reply, Plaintiff maintains that he has established a prima facie case and that Defendant's attempt to raise factual issues to oppose Plaintiff's motion cannot be considered because a motion to amend "only looks to the evidence alleged by the Plaintiff to determine if it meets the threshold of proof for punitive damages." [#359] at 2.  In

addition, Plaintiff argues that good cause exists for the late filing of the Motion and that Defendant is not prejudiced because crucial evidence was made available only recently and any delay has been caused by Defendant. *Id.* at 2-4.

## II. Analysis

### A.    Rule 16(b)(4)

As a preliminary matter, the Court must first determine whether Plaintiff has filed his Motion within the deadline prescribed by the Scheduling Order, and if not, whether he has established good cause under Rule 16(b)(4)[4] for his failure to timely do so. *Gorsuch, Ltd. B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014) ("We now hold that parties seeking to amend their complaints after a scheduling order deadline must establish good cause for doing so."); *Ayon v. Kent Denver Sch.*, No. 12-cv-2546-WJM-CBS, 2014 WL 85287, at *2 (D. Colo. Jan. 9, 2014) (noting that where a party seeks to amend his pleadings after the deadline established in the scheduling order, "the majority of courts have held that a party must meet the two-part test of first showing good cause to amend the scheduling order under Rule 16(b), and then showing that amendment would be allowed under Rule 15(a)").

The Scheduling Order that currently governs this case provides that the deadline for amendment of pleadings was March 1, 2018. *Sched. Order* [#288] at 12. The Initial Motion [#307] was filed on October 5, 2018 and the present Motion [#353] was filed on February 6, 2019. Therefore, Plaintiff's request for leave to amend his Second Amended Complaint [#134] is untimely and he must show good cause for his failure to timely move to amend

---

[4] Unless otherwise noted, "Rule 16(b)(4)" and all similar citations refer to the Federal Rules of Civil Procedure.

pursuant to Rule 16(b)(4) (a Scheduling Order deadline "may be modified only for good cause and with the judge's consent.").

To demonstrate good cause, Plaintiff must "show that [he was] diligent in attempting to meet the deadline[ ]," and provide "an adequate explanation for any delay." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006) (explaining that lateness itself does not justify denial of a motion to amend, but "undue" lateness does). "While rigid adherence to the pretrial scheduling order is not advisable," *SIL-FIO v. SFHC, Inc.*, 917 F.2d 1507, 1519 (10th Cir. 1990), the pleading amendment deadline requires that parties conduct discovery efficiently and promptly in order to timely comply. *See Granite Southlands Town Ctr. LLC v. Alberta Town Center, LLC*, No. 09-cv-00799-ZLW-KLM, 2010 WL 2635524, at *2 (D. Colo. June 8, 2010); *Sanchez v. City & Cty. of Denver ex rel. Bd. of Water Comm'rs*, No. 07-cv-01805-MSK-BNB, 2007 WL 4557842, at *1 (D. Colo. Dec. 20, 2007) (unpublished decision). However, "[t]he fact that a party first learns through discovery of information which may lead to amendment of deadlines set forth in the Scheduling Order constitutes good cause for such amendment pursuant to Rule 16(b)[(4)]." *Riggs v. Johnson*, No. 09-cv-01226-WYD-KLM, 2010 WL 1957110, at *3 (D. Colo. Apr. 27, 2010) (citing *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668-69 (D. Colo. 2001)).

Here, Plaintiff alleges that he learned of new information through discovery after the March 1, 2018 deadline for the amendment of pleadings. *Motion* [#353] at 1-2. Plaintiff states that "[s]ubstantial discovery has been completed and certain of the fact discovery documents were received as late as June 22, 2018 [and that] [r]elevant expert discovery depositions were completed prior to or on [ ] September 26, 2018." *Id.* at 2. In its Response, Defendant contends that there is no excuse or good cause for Plaintiff's delay

and that "Plaintiff was in possession of all of the evidence, or had the opportunity to discover it, supporting [his punitive damages claim] well before filing this motion." [#358] at 13.

Plaintiff's Reply addresses this contention by chronicling numerous discovery disputes which, according to Plaintiff, have caused the delay in obtaining information crucial to his proposed Third Amended Complaint. [#359] at 2-4. Specifically, Plaintiff notes that, "[o]n March 9, 2018, Defendant served over 500 pages of emails and other documents that had not been previously disclosed during six years of litigation, which revealed new information and evidence for the first time . . . ." *Id.* at 2. Plaintiff explains that these documents revealed the names of previously unidentified witnesses and new information which caused Plaintiff to request supplemental depositions. *Id.* at 2-3. Plaintiff notes that Defendant opposed Plaintiff's request for supplemental depositions, requiring a ruling from the Court which granted permission for the depositions on April 24, 2018. *Id.*; *see Minute Entry* [#300]. Plaintiff further states that the newly produced emails contained relevant communications between Defendant and Defendant's broker, Adam Sarote ("Sarote"), which necessitated Plaintiff's taking the deposition of Mr. Sarote. *Reply* [#359] at 3.

Moreover, Plaintiff alleges that, on June 22, 2018, after the discovery deadline, Defendant served Plaintiff with a copy of its previously undisclosed safety guidelines. *Id.* Plaintiff forwarded this information to his safety expert who was required to review the information and submit a report by June 28, 2018, the affirmative expert disclosure and report deadline. *Id.*; *see Sched. Order* [#288] at 13. According to Plaintiff, "Defendant then refused to allow Plaintiff to schedule the depositions of any of [Defendant's] liability experts until Defendant completed the depositions of Plaintiff's experts." *Reply* [#359] at 3.

Because of this, Plaintiff explains that he was unable to take the depositions of three of Defendant's experts until September 24, 2018, through September 28, 2018. *Id.* at 4.[5] Based on the foregoing, Plaintiff states that it was not until the September 28, 2018 deadline to complete expert discovery, that "Plaintiff had the necessary discovery information required for evaluation of Defendant's conduct" which led to Plaintiff filing the instant Initial Motion [#307]. *Id.*

After reviewing the record in this case and the parties' briefings, the Court finds that the disclosure of merits-related discovery after the deadline to amend pleadings and the timing of Plaintiff's depositions constitute good cause for purposes of Rule 16(b)(4). In asserting his claim for punitive damages in the Motion [#353], Plaintiff heavily relies on evidence that was obtained after the March 1, 2018 deadline to amend pleadings. *See e.g.*, *Motion, Exs.* 13-18 [#353-14 through #353-19], *Exs.* 21-30 [#353-22 through #353-31], *Exs.* 33-34 [#353-34, #353-35], *Ex.* 40 [#353-41], *Exs. 42-46* [#352-43 through #353-47]. Most significantly, Plaintiff relies on the deposition testimony taken from Dr. Richard Ziernicki ("Ziernicki") on September 20, 2018, two weeks prior to Plaintiff filing the Initial Motion [#307]. *See Motion, Exs. 16-17* [#353-17, #353-18]. When a party learns new information after the amendment of pleadings deadline has passed, the newly-acquired information satisfies Rule 16's good cause requirement. *See, e.g.*, *Pumpco, Inc.*, 204 F.R.D. at 668-69 ("[t]he fact that a party first learns, through discovery or disclosures, information necessary for the assertion of a claim after the deadline to amend established

---

[5] Plaintiff notes that he took the deposition of Defendant's fourth expert as late as October 24, 2018, based on that expert's availability. This was nineteen days after Plaintiff filed his Initial Motion [#307]. *Reply* [#359] at 4.

in the scheduling order has expired constitutes good cause to extend that deadline."); *see also Int'l Bhd. of Teamsters, Airline Div. v. Frontier Airlines, Inc.*, No. 11-cv-02007-MSK-KLM, 2012 WL 1857549, at *3 (D. Colo. May 22, 2012) ("[T]he Court is reluctant to refuse an extension of the amendment deadline considering the parties' ongoing discovery disputes which obviously have delayed production[.]"); *Lewis v. Denver Fire Dep't,* 09-cv-00004-PAB-MJW, 2010 WL 3873974, at *7-8 (D. Colo. Sept. 28, 2010) (good cause shown to amend complaint after the Scheduling Order's deadline where plaintiff first learned of new information through depositions). Therefore, the Court finds that Plaintiff has demonstrated good cause to satisfy Rule 16(b)(4), and it is thus appropriate for the Court to proceed to the next step of the analysis.

## B. Rule 15(a)(2) and Minnesota Substantive Law

### 1. Legal Standard

It is well established in the Tenth Circuit that, once good cause is shown pursuant to Rule 16(b)(4), the party seeking leave to amend must then satisfy the standard set forth in Rule 15(a)(2). *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015) (quoting *Gorsuch*, 771 F.3d at 1240 (10th Cir. 2014)); *see Williams-Berrien v. Wilson*, No. 15-cv-00948-REB-KLM, 2018 WL 3829955, at *2 (D. Colo. Aug. 13, 2018); *Petekeiwicz v. Stembel*, No. 13-cv-1865-RM-KLM, 2015 WL 1740386, at *4 (D. Colo. Apr. 14, 2015); *Nicastle v. Adams Cty. Sheriff's Office*, No. 10-cv-816-REB-KMT, 2011 WL 1465586, at *3 (D. Colo. Mar. 14, 2011), *adopted by* 2011 WL 1464588 (D. Colo. Apr. 18, 2011); *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 688 (D. Colo. 2000). Pursuant to Rule 15(a)(2), the Court should grant leave to amend "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend need not be given, however, when the moving party

unduly delayed, failed to amend despite ample opportunity to do so, the nonmoving party would be unduly prejudiced, or amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, Plaintiff does not apply Rule 15 in his Motion [#353].[6] Rather, Plaintiff assumes that Minn. Stat. § 549.191 governs, which sets forth the procedure for amending a complaint to add a claim for punitive damages under Minnesota state law. *Motion* [#353] at 3-4. Defendant's Response, on the other hand, raises arguments pursuant to Rule 15 and Minn. Stat. § 549.191. [#358] at 2-12, 15. Plaintiff addresses Defendant's arguments with respect to Rule 15 in his Reply [#359] at 2-4. Neither party, however, specifically argues which standard should apply.

Pursuant to Minn. Stat. § 549.191, inclusion of a claim for punitive damages is prohibited in the initial pleading. "After filing the suit a party may make a motion to amend the pleadings to claim punitive damages. The motion must allege the applicable legal basis under [Minn. Stat. § 549.20] or other law for awarding punitive damages in the action and must be accompanied by one or more affidavits showing the factual basis for the claim." Minn. Stat. § 549.191.[7] "[I]f the court finds prima facie evidence in support of the motion, the court shall grant the moving party permission to amend the pleadings to claim punitive damages." *Id.* This is a "heightened standard" that "obligates the court to consider evidence in determining the propriety of the motion to amend[ ]" and thus conflicts with Rule

---

[6] This is despite Plaintiff acknowledging that his Motion [#353] is filed pursuant to Rule 15.

[7] Here, Plaintiff has attached an affidavit sworn to by Plaintiff's counsel. *See Motion, Ex. 54* [#353-55]. Defendant does not contest the adequacy of this affidavit for purposes of Minn. Stat. § 549.191. *See generally Response* [#358].

15 which directs the Court to "freely give leave" to amend a pleading when justice so requires. *Shank v. Carleton Coll.*, No. 16-cv-1154 (PJS/HB), 2018 WL 4961472, at *4 (D. Minn. Oct. 15, 2018), *aff'd*, 2019 WL 121938 (D. Minn. Jan. 7, 2019); Fed. R. Civ. P. 15(a).

Plaintiff's reliance on Minn. Stat. § 549.191 instead of Rule 15 is premised on past decisions from the District of Minnesota which has traditionally applied the state pleading standard to claims for punitive damages under Minnesota law in diversity cases. *See Motion* [#353] at 4 (citing *Healey v. I-Flow, LLC*, 853 F. Supp. 2d 868, (D. Minn. 2012); *Hern v. Bankers Life Cas. Co.*, 133 F. Supp. 2d 1130 (D. Minn. 2001); *Olson v. Snap Products, Inc.*, 29 F. Supp. 2d 1027 (D. Minn. 1998)). However, in light of the United States Supreme Court's decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), judges in the District of Minnesota "have freshly analyzed whether Minn. Stat. § 549.191 or Fed. R. Civ. P. 15 should govern a request for leave to amend to add punitive damages in a request for relief." *Ramirez v. AMPS Staffing, Inc.*, No. 17-5107 (DWF/BRT), 2018 WL 1990031, at *1 (D. Minn. Apr. 27, 2018) (citations omitted); *see also Selective Ins. Co. of S.C. v. Sela*, 353 F. Supp. 3d 847, 856 (D. Minn. 2018) (acknowledging the traditional practice of applying Minn. Stat. § 549.191 to claims for punitive damages but noting that this practice "seems inconsistent with the general rule that federal pleading rules apply in federal court, even to claims that arise under state law[ ] [a]nd . . . seems to have developed without a great deal of analysis").

This analysis has resulted in a new consensus within the District of Minnesota that Rule 15, and *not* Minn. Stat. § 549.191, is the proper standard to apply when determining whether a motion to amend to add a claim for punitive damages should be granted or denied in federal diversity cases. *See Barry v. Consol. Asset Recovery Sys., Inc.*, No. 18-

cv-1194 (MJD/BRT), 2019 WL 351339, at *2 n.1 (D. Minn. Jan. 29, 2019) ("In conformity with other recent decisions in this District, the undersigned concludes that Rule 15 and not Minn. Stat. § 549.191 controls the adjudication of motions to amend."); *Williams v. Rodenburg LLP*, No. 17-cv-4962 (SRN/HB), 2018 WL 5801889, at *4 (D. Minn. Nov. 6, 2018) (holding that Rule 15 and not Minn. Stat. § 549.191 controls the adjudication of motions to amend); *Shank*, 2018 WL 4961472, at *4 (same); *Rogers v. Mentor Corp.*, No. 12-cv-2602 (SRN/SER), 2018 WL 2215519, at *6 (D. Minn. May 15, 2018), *aff'd sub nom. Urbieta v. Mentor Corp.*, No. 13-cv-1927 (ADM/LIB), 2018 WL 3475484 (D. Minn. July 19, 2018) (same); *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, MDL No. 15-2666 (JNE/FLN), 2017 WL 5187832, at *4 (D. Minn. July 27, 2017) (same); *but see Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*, No. 15-cv-3183 (ADM/LIB), Docket No. 534 (D. Minn. Mar. 8, 2018) (unpublished order) (finding the court must apply Minn. Stat. § 549.191).

Nevertheless, this "is not to say that Minnesota law has no bearing; *procedurally*, the Court is required to view the [proposed amended complaint] through the permissive Rule 15 lens, but must nevertheless determine whether it states a plausible claim for punitive damages in light of substantive Minnesota law." *Shank*, 2018 WL 4961472, at *4 (emphasis in the original). To establish a prima facie claim for punitive damages pursuant to Minnesota law, the moving party must show "clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20, Subdivision 1(a). As explained below, "deliberate disregard" is defined by Minnesota statute. *See* Minn. Stat. § 549.20, Subdivision 1(b).

Accordingly, this Court follows recent decisions from the District of Minnesota by

adjudicating the Motion [#353] pursuant to Rule 15(a)(2) and applying Minnesota substantive law to Plaintiff's claim for punitive damages where appropriate. *See also Ayres v. AG Processing Inc.*, No. 04-cv-2060-DJW, 2005 WL 1799261, at *3 (D. Kan. July 22, 2005) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law. The issue of whether punitive damages are permitted is governed by state substantive law.") (footnote omitted)).

### 2. Application

Pursuant to Rule 15(a)(2), the Court considers any arguments raised by Defendant related to whether justice would be served by amendment. Here, Defendant raises arguments of futility, unfair prejudice, and undue delay. *See generally Response* [#358]. The Court addresses each argument in turn.

#### a. Futility

First, Defendant contends that Plaintiff cannot make a prima facie case for punitive damages pursuant to Minnesota law. While this argument is couched in terms of Minn. Stat. § 549.191, Defendant essentially objects to the amendment on grounds of futility. For the reasons set forth below, the Court finds Defendant's futility argument unavailing.

An amendment is futile only if it would not survive a motion to dismiss. *See Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (citing *Jefferson Cty. Sch. Dist. v. Moody's Investor's Servs.*, 175 F.3d 848, 859 (10th Cir. 1999)). In contrast to the process established by Minn. Stat. § 549.191, which contemplates consideration of evidence outside the pleadings, the Federal Rules of Civil Procedure do not permit the Court to "consider matters outside the pleadings when determining whether a complaint adequately states a claim upon which relief may be granted[.]" *Shank*, 2018 WL 4961472, at *6.

Therefore, the Court must base its determination of Plaintiff's Motion [#353] "on a four-corners analysis of the" proposed Third Amended Complaint [#353-54]. *Id.* "In ascertaining whether plaintiff's proposed amended complaint is likely to survive a motion to dismiss, the [C]ourt must construe the complaint in the light most favorable to plaintiff, and the allegations in the complaint must be accepted as true." *See Murray v. Sevier*, 156 F.R.D. 235, 238 (D. Kan. 1994). Moreover, "[a]ny ambiguities must be resolved in favor of plaintiff, giving him 'the benefit of every reasonable inference' drawn from the 'well-pleaded facts' and allegations in his complaint." *Id.* (quoting *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963)). "The question of whether [Plaintiff] has sufficiently alleged facts to support [his] claim for punitive damages necessarily requires the Court to apply the federal pleading standard -- *Twombly* and *Iqbal* -- to the elements of a punitive damages claim, which are established by state law." *MRK Int'l, LLC v. Earthstone Int'l, LLC*, No. 09-cv-827 MCA/DJS, 2011 WL 13289855, at *3 (D.N.M. Mar. 30, 2011). Accordingly, the Court must consider whether Plaintiff's proposed Third Amended Complaint [#353-54] adequately asserts a claim for punitive damages pursuant to Minnesota substantive law.

As stated above, a claim for punitive damages pursuant to Minnesota law requires the moving party to show "clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20, Subdivision 1(a). "Deliberate disregard" is statutorily defined as follows:

> (b) A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:

> (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
>
> (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minn. Stat. § 549.20, Subdivision 1(b).  In short, "the statute substantively requires '(1) knowledge of or an intentional disregard of facts that make injury to the plaintiff's rights probable; and (2) action despite such knowledge.'"  *Rogers*, 2018 WL 2215519, at *8 (quoting *Nunn v. Noodles & Co.*, No. 09-cv-1286 (JNE/JJK), 2010 WL 3170763, at *3 (D. Minn. Aug. 6, 2010)).  "[A] mere showing of negligence is not sufficient to sustain a claim of punitive damages under Minnesota law."  *Shank*, 2018 WL 4961472, at *7 (internal citations and quotation marks omitted).

Here, Defendant argues that "Plaintiff's factual allegations (if true) at most raise the specter of negligence [and that] [n]one of the facts or evidence supplied in the Motion involve deliberate or intentional indifference for the safety of others."  *Response* [#358] at 1-2.  Thus, Defendant asserts that "there is no evidence, much less clear and convincing evidence, that [it] intentionally or deliberately disregarded the safety of others."  *Response* [#358] at 3-4.  Defendant attaches exhibits to its Response [#358] as evidence to rebut the factual allegations Plaintiff relies on in the Motion [#353] and proposed Third Amended Complaint [#353-54].  *See Response, Exs. A-I* [#358-1 through #358-9].  However, for the reasons stated above, the Court does not consider this evidence at the pleading stage.  *MRK Int'l, LLC*, 2011 WL 13289855, at *3; *Shank*, 2018 WL 4961472, at *6.

Turning to the proposed Third Amended Complaint, Plaintiff's new claim for punitive damages is supported by eight general allegations which are, in turn, supported by

numerous factual assertions based on the evidence Plaintiff has obtained through discovery. *See* [#353-54] ¶¶ 202-253; *Motion* [#353] at 5-16. First, Plaintiff alleges that Kevin Czaplewski ("Czaplewski"), in his role as Defendant's lead manager in Colorado, recklessly signed the printing equipment's bill of lading as a "shipper" which, according to Plaintiff, authorized the cargo's transportation without any regard for how the transport and unloading process would impact the safety of Plaintiff or the motoring public. *Proposed Third Am. Compl.* [#353-54] ¶¶ 202-08. In asserting that Mr. Czaplewski was not qualified to sign the bill of lading, Plaintiff primarily relies on Mr. Czaplewski's own deposition testimony in which he acknowledged not knowing that:

> (a) A bill of lading must be accurate and honest. (b) A shipper is not allowed to make false statements. (c) A shipper is required to follow the law when completing a bill of lading. (d) The shipper, carrier and driver rely on a bill of lading. (e) An inaccurate bill of lading may create an unsafe situation for the shipper, carrier, driver and general public.

*Id.* ¶ 203; *see Motion, Ex. 4* [#353-5]. Second, Plaintiff alleges that Mr. Czaplewski recklessly certified the cargo as properly packaged and ready for transport. *Proposed Third Am. Compl.* [#353-54] ¶¶ 209-16. Based on the above testimony and other depositions, Plaintiff contends that Mr. Czaplewski lacked the qualification to provide this certification and that none of Defendant's employees made an attempt to determine whether the cargo was in proper condition for transportation according to the applicable Department of Transportation regulations. *Id.* ¶¶ 210-13; *Motion, Exs. 9, 10, 11* [#353-10 through #353-12]. Third, Plaintiff alleges that Defendant's employees acted in deliberate disregard of the directions received from Defendant's broker, EZ Screen Printing LLC, regarding the need for additional deck space for the steel lift tables. *Proposed Third Am. Compl.* [#353-54] ¶¶ 217-21. Fourth, Plaintiff alleges that Defendant's employees

repeatedly misrepresented that the steel lift tables were hydraulic when, in fact, they were pneumatic. *Id.* ¶¶ 222-28. According to Plaintiff, this misrepresentation resulted in the tables being loaded onto Plaintiff's truck less securely. *See id.* Among other testimony, Plaintiff relies on that of a loading foreman who testified that: "if he had been told the tables were pneumatic (air) prior to the loading on February 10, 2010, he would have likely turned the tables over and loaded them with the flat side down on the trailer floor and wheels up." *Id.* ¶ 227; *see Motion, Exs. 17, 18, 19, 21, 22* [#353-18 through #353-23]. Relatedly, Plaintiff's fifth allegation is that Defendant deliberately concealed information from him regarding the loading and transportation of the equipment and tables. *Proposed Third Am. Compl.* [#353-54] ¶¶ 229-31. Specifically, Plaintiff avers that Defendant knew the following information but failed to disclose this information to Plaintiff prior to the accident:

> (a) [Defendant] was responsible for the disassembly of all equipment, but they decided not to remove wheels from the tables. (b) [Defendant] did not choose to build containers for the tables or use shrink wrap, carts or pallets for the tables. (c) [Defendant] had not responded to requests for the purchase of adequate deck space for the tables. (d) [Defendant] was required to make sure the tables were suitable for shipping, and they shirked their responsibility. (e) [Defendants' employees] knew the tables were pneumatic (air), and they did not divulge that information to the loaders (Duffy), the driver (Plaintiff), the unloaders (I.M.S.) or EZ Screen (broker).

*Id.* ¶ 229. Plaintiff asserts that the concealment of this crucial information "impacted his ability to make decisions about whether he should accept [Defendant's] cargo," and evidences Defendant's "deliberate disregard for the rights or safety of Plaintiff." *Id.* ¶ 231.

Plaintiff's sixth allegation in support of his punitive damages claim is that Defendant demonstrated a deliberate disregard for Plaintiff's safety in failing to perform a "Job Hazard Analysis" or stop work prior to the unloading. *Id.* ¶¶ 232-39. Plaintiff asserts that Defendant's employees knew that the unloading of this printing equipment was a

dangerous activity and that, prior to the unloading, the cargo had shifted on Plaintiff's truck and that Plaintiff's truck had been damaged. *Id.* ¶¶ 232, 235, 237. Relying on testimony from David Nelson, Defendant's Shipping and Receiving Manager, Plaintiff argues that Defendant's employees should have postponed the unloading or followed the company's internal guidelines by conducting a "Job Hazard Analysis" prior to the unloading. *Id.* ¶¶ 234, 236, 238; *see Motion, Ex. 44* [#353-45]. Similarly, Plaintiff's seventh allegation is that Defendant's employees failed to follow other internal company guidelines which required an inspection of the cargo prior to unloading, despite the inherent danger of unloading a 1500 pound steel table. *Proposed Third Am. Compl.* [#353-54] ¶¶ 240-45. Finally, Plaintiff alleges that Defendant acted with deliberate disregard for Plaintiff's safety by directing him to park his truck in a confined area with no means to escape falling cargo. *Id.* ¶¶ 246-53. In support of this allegation, Plaintiff reasserts that Defendant's employees should have known that the unloading would be dangerous, the cargo had shifted in transit, there was damage to Plaintiff's truck (if an inspection had been conducted), and Plaintiff, as the driver, would likely be the person releasing the straps on the cargo. *Id.* ¶ 246. As Plaintiff's Motion [#353] indicates, this final allegation further relies on Dr. Ziernicki's opinion that "due to the space constraints, there was no room for [Plaintiff] to escape when the table was falling." *Motion, Ex. 22* [#353-23] at 35.

In light of the detailed factual allegations summarized above, the Court cannot conclude that Plaintiff's claim for punitive damages could not withstand a motion to dismiss. Because the Court must assume that Plaintiff's factual allegations are true and must draw all reasonable inferences in his favor, and given Plaintiff's ample description, the Court is satisfied that Plaintiff's proposed Third Amended Complaint [#353-54] alleges a plausible

claim "that the acts of the defendant show[ed] deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20.

Defendant's futility argument primarily focuses on the merits of Plaintiff's punitive damages claim rather than on whether Plaintiff has pleaded a plausible claim for deliberate disregard pursuant to Minn. Stat. § 549.20. *See Response* [# 358] at 2-11. Insofar as Defendant offers evidence to undermine specific facts stated within each of Plaintiff's eight generalized allegations, "the Court considers Plaintiff's allegations alone," *Barry*, 2019 WL 351339, at *5, and agrees with Plaintiff that whether a claim for punitive damages has been adequately pled depends on the totality of Defendant's alleged conduct. *Reply* [#359] at 6. Moreover, to the extent that Defendant argues that Plaintiff must demonstrate a "knowing, intentional attempt to deceive," *Response* [#358] at 5, this is not the standard set forth in Minn. Stat. § 549.20, which is instead satisfied where a person "intentionally disregards facts that create a high probability of injury to the rights or safety of others and . . . deliberately proceeds to *act with indifference* to the high probability of injury to the rights or safety of others." Minn. Stat. § 549.20, Subdivision 1(b) (emphasis added). Here, taking Plaintiff's new factual allegations collectively, the Court finds that he has alleged "facts that create[d] a high probability of injury" to his safety and that Defendant "deliberately proceed[ed] to act with indifference to the high probability of injury to" his safety. *Id.*

Therefore, the Court concludes that Plaintiff's claim for punitive damages is not futile. *See Foman*, 371 U.S. at 182 ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). The Court emphasizes, however, that this Order does not evaluate or address the merits of awarding punitive damages in this case, but is limited to the

recognition that the issue of punitive damages may be properly included in the pleadings at this time.

### b.    Unfair Prejudice and Undue Delay

Next, Defendant argues that it is unfairly prejudiced by the lateness of Plaintiff's request. *Response* [#358] at 15. "Prejudice to the nonmoving party is the most important factor in considering whether amendment should be permitted." *Minter*, 451 F.3d at 1207. "Courts typically find prejudice only when the amendment unfairly affects the [opposing party] 'in terms of preparing [its] defense to the amendment.'" *Id.* at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)). "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the [original pleading] and raise significant new factual issues." *Id.* (citations omitted).

Here, Defendant alleges that, because fact and expert discovery closed on May 31, 2018, and October 26, 2018, respectively, it is "effectively too late for [Defendant] to conduct any further discovery regarding whether its conduct meets the Minnesota punitive damages standard.  Nor did [Defendant] have any reason to know Plaintiff would seek punitive damages[.]" *Response* [#358] at 15.  In making this argument, Defendant does not cite to any *specific* way in which it will suffer undue prejudice in defending this lawsuit if the Court permits the amendment. *Little v. Reed-Prentice Div. Of Package Mach., Co.*, 131 F.R.D. 591, 593 (D. Kan. June 25, 1990).  Neither party suggests the proposed claim for punitive damages in this case is premised on facts wholly unknown to Defendant.  Thus, it is difficult to see what, if any, new factual issues will arise by allowing the amendment. Moreover, the Court notes that Defendant's Response attempts to rebut Plaintiff's proposed punitive damages claim and substantive arguments with Defendant's own evidence.  *See*

[#358] at 4-11. This demonstrates to the Court that Defendant need not conduct additional discovery to defend against Plaintiff's punitive damages claim. Accordingly, without any specific indication as to how Defendant would be prejudiced by permitting the amendment or any indication that Plaintiff's claim for punitive damages would inject a host of new issues or theories requiring additional discovery, the Court finds that Defendant would not be unfairly prejudiced by permitting Plaintiff to file the proposed Third Amended Complaint.

Finally, to the extent that Defendant argues that the Motion [#353] should be denied on the basis of undue delay, the Court disagrees. "'Lateness by itself does not justify the denial of the amendment.'" *Minter*, 451 F.3d at 1204 (quoting *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975)). Finding undue delay is appropriate where Plaintiff fails to offer a reasonable justification for why it did not seek amendment earlier. *Sipp v. Unumprovident Corp.*, 107 Fed. App'x. 867, 876-77 (10th Cir. 2004) (unpublished). For the reasons discussed above, the Court finds that Plaintiff has offered a reasonable justification for the untimeliness of the Motion [#353].

### III. Conclusion

For the reasons set forth above, the Court permits Plaintiff leave to file his Third Amended Complaint. Accordingly,

IT IS HEREBY **ORDERED** that the Motion [#353] is **GRANTED**. Plaintiff's Third Amended Complaint [#353-54] is accepted for filing as of the date of this Order. **Plaintiff shall file a "clean" non-red-lined version of the Third Amended Complaint on the electronic docket no later than May 1, 2019**.

IT IS FURTHER **ORDERED** that Defendant shall answer or otherwise respond to

the Third Amended Complaint in accordance with the Fed. R. Civ. P. 15(a)(3) after service

of the "clean" non-red-lined version of the Third Amended Complaint.

Dated:  April 25, 2019

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge