IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 13-cv-00327-CMA-KLM

FRANKLYN A. JENKINS,

    Plaintiff,

v.

IMMEDIA, INC., a Minnesota corporation.

    Defendant.

## ORDER REGARDING *SAVAGE* RULE

This matter is before the Court on Plaintiff Franklyn Jenkins's Trial Brief (Doc. # 389), Defendant Immedia Inc.'s Brief Re: *Savage* Rule (Doc. # 397), and Immedia's Trial Brief (Doc # 399.) Throughout the course of this litigation, the parties have expended substantial resources, time, and effort addressing the issue of whether and how the *Savage* rule applies to this case. Both parties agree that Minnesota law governs Plaintiff's claims against Immedia. For the reasons set forth below, the Court holds that the *Savage* rule does not apply to Plaintiff's claims against Immedia.

### I. **BACKGROUND**

The Court incorporates herein the factual and procedural background of this dispute, as described in detail in this Court's Order Granting Plaintiff's Motion for Reconsideration (Doc. # 268) and the Magistrate Judge's Recommendation (Doc. #

359), which were incorporated in the Court's May 31, 2019 Order Affirming and Adopting the April 25, 2019 Recommendation (Doc. # 378).

## II. APPLICABLE LAW

### A. THE *SAVAGE* RULE

In *United States v. Savage Truck Line, Inc.*, 209 F.2d 442 (4th Cir. 1953), the Fourth Circuit held that a carrier, who had actual knowledge of the unsafe condition of the cargo, was the party with the last clear chance to avoid damage to the shipped cargo and, as such, was the principal offender and obligated to pay for the damage to the goods. *Id*. at 447. It is of import that the *Savage* court tethered its liability determination to doctrines of indemnity, absolute liability, principal or contributory fault, and last clear chance.[1] It is also of import that the *Savage* court's decision was issued in the context of which party was liable for damage to the transported goods:[2]

> The decision of the questions raised by these appeals **as to** the respective liabilities of the United States [the shipper] and of Savage [the carrier] **for damages occasioned by each to the property** of the other turns on the rights and liabilities inherent in the carrier-shipper relationship between them in the interstate transaction upon which they were engaged.

\*\*\*

---

[1] The Court acknowledges that the *Savage* court applied these doctrines in the context of first determining liability between the shipper and carrier for the damaged goods and then for determining whether the carrier must indemnify the shipper for damages to third-parties injured as a result of the accident. The *Savage* court relied on the *Savage* rule and these doctrines for determining both of these issues.

[2] These distinctions are important because the *Savage* rule must be limited to and "taken in connection with the case in which" the holding's "expressions are used." *Cohens v. Virginia*, 19 U.S. 264, 399 (1821); *see also Humphrey's Executor v. United States*, 295 U.S. 602, 626 (1935). As Chief Justice Marshall wrote, "It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not control the judgment in a subsequent suit, when the very point is presented for decision." *Cohens*, 19 U.S. at 399.

> Sometimes the principal fault is attributable to the party who performed the last act which resulted in the damage and without which it would not have occurred, that is, to the party who had the **last clear chance** to avoid the accident. (citations omitted) Whatever the terminology, the inquiry is always whether the difference in the gravity of the faults of the participants is so great as to throw the whole loss upon one. (citation omitted)
>
> \*\*\*
>
> With equal certainty it was shown that the agents of Savage inspected the load before the journey was begun and **that the driver concluded from his observation that the load was not properly fastened to the truck when he took charge of it. Obviously it was his duty, having this knowledge, to drive with particular attention to the speed of the vehicle but he conducted himself as if conditions were normal and the catastrophe ensued**. It follows, applying the rule above set out, that Savage is not entitled to recover from the United States **for damages to the Savage truck**, but that the United States is entitled to **recover from Savage for the damage to its airplane engines and containers**.
>
> \*\*\*
>
> Savage was not only obligated to carry the goods safely but it had the **last clear chance** to avoid the catastrophe, and therefore as the principal offender it must indemnify the United States [the shipper] for any damages which it is obliged to pay to the injured parties.

209 F.2d at 444-47 (emphasis added).

The *Savage* court concluded that, because the carrier was aware, at the time he took charge of the load, that load was not properly fastened to the truck, the "carrier [would] [] be liable notwithstanding the negligence of the shipper." *Id.* at 445.

**B.     MINNESOTA LAW**

The Minnesota Supreme Court has not addressed the issue of whether the *Savage* rule applies to personal injury claims or whether the *Savage* rule is compatible with Minnesota's comparative fault statutory scheme. "When no decision of a state's highest court has addressed an issue of that state's law, the federal court confronted

3

with that issue 'must predict how [the State's] highest court would rule.'" *Stuart v. Colo. Interstate Gas. Co.*, 271 F.3d 1221, 1228 (10th Cir. 2001) (quoting *FDIC v. Schuchmann*, 235 F.3d 1217, 1225 (10th Cir. 2000)); *Walker v. Hartford Life and Accident Ins. Co.*, 831 F.3d 968, 973 (8th Cir. 2016); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Only three reported Minnesota Supreme Court decisions have cited to the *Savage* case. *See Powers v. Siats*, 70 N.W.2d 344 (Minn. 1955); *Hendrickson v. Minn. Power & Light Co.*, 104 N.W.2d 843 (Minn. 1960), *overruled on other grounds by Tolbert v. Gerber Indus., Inc.*, 255 N.W.2d 361 (Minn. 1977); and *Haney v. Int'l Harvester Co.*, 201 N.W.2d 140 (Minn. 1972). The Court reviews each case in turn.

In *Powers v. Siats*, a company owner purchased 500 cases of eggs and directed carrier defendants to deliver the eggs from Minnesota to New Jersey. 70 N.W.2d at 347. The company owner and carrier defendants executed a bill of lading that mandated two conditions of delivery: "Refrigeration is Necessary to Protect this Shipment" and that "Eggs must deliver at destination with an internal temperature of 50 or less." *Id.* During transportation, carrier defendants checked the temperature of the eggs, discovered that the eggs were warmer than contractually required, and attempted to refrigerate and use ice to cool down the eggs. *Id.* at 347. Despite the carrier defendants' efforts, the eggs were delivered at a higher temperature than contractually required and the plaintiff owner rejected them. *Id.* The Minnesota Supreme Court rejected the carrier defendants' argument that language of the bill of lading absolved the carrier defendants of liability for their failure to deliver eggs at a contractually agreed upon temperature. at 347, 350.

4

In that case, although the *Powers* decision was based primarily on the contract embodied in the bill of lading, the Court also addressed briefly the carrier defendants' argument that they were absolved of liability because the parties agreed that the carrier defendants were not negligent The Minnesota Supreme Court, however, relied on the *Savage* rule for the following proposition:

> The general rule is that, when the shipper assumes the responsibility for the proper condition of the goods when loaded, or the responsibility for their proper loading, he becomes liable for the defects which are latent and concealed and which cannot be discerned by the ordinary observation of the carrier's agents; but if the **improper condition of the goods** or the manner of **their** loading is apparent, or otherwise becomes seasonably known to the carrier, the carrier will be liable for damages notwithstanding the negligence of the shipper.

*Id.* (citing *United States v. Savage Truck Line, Inc.*, 209 F.2d 442 (4th Cir. 1953)). The court concluded that the carrier defendants did not bring "themselves within any exception which absolves them from their common-law liability as insurers" because their "act of proceeding with the delivery of the eggs [a]fter acquiring knowledge of their excessively high temperature was at least a contributing cause of the rejection of the shipment by the consignee." *Id.* The Minnesota Supreme Court's analysis was limited to the damage of transported goods and payment therefor, issues not relevant to the instant case.

In *Hendrickson v. Minn. Power & Light Co.*, plaintiff's decedent was hired by the third-party defendant to deenergize power lines owned by a power company to facilitate the moving of a house. 104 N.W.2d at 846. The plaintiff's decedent sued the power company and defendant employer for wrongful death of the decedent who was killed when the power lines did not deenergize. A jury verdict was returned against the power

5

company, which sought contribution or indemnity from the third-party defendant employer. *Id.*

In the Minnesota Supreme Court's analysis as to whether the power company could seek indemnity from the third-party defendant employer, the court cited *Savage* for the proposition that "[i]n the modern view, principles of equity furnish a more satisfactory basis for indemnity." *Id.* at 847. The *Hendrickson* court relied on a portion of the *Savage* decision[3] to develop what became known as Rule 4 in Minnesota's indemnity jurisprudence: "A joint tortfeasor may generally recover indemnity . . . [w]here the one seeking indemnity has incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged." 104 N.W.2d at 848. As discussed in greater detail below, only seventeen years later, however, the Minnesota Supreme Court discarded Rule 4. *See Tolbert v. Gerber Indus., Inc.*, 255 N.W.2d 361, 367 n.10 (Minn. 1977). Therefore, the Court ascribes no weight to the *Hendrickson* opinion.

Finally, in *Haney v. Int'l Harvester Co.*, a plaintiff employee was injured in a one-vehicle accident and sued the manufacturer of the vehicle for negligence in the manufacture, design, and assembly of the truck, as well as for breach of warranty and

---

[3] In *Savage*, because both the defendant carrier and shipper were negligent in causing the trucking accident, damaging the transported goods and harming innocent third-party individuals, the shipper sought indemnity from the defendant carrier for the shipper's liability for injuries to the third parties. 209 F.2d at 446–47. The *Savage* court couched the defendant carrier's "principal fault" as one embedded in the doctrine of last clear chance" so that the court could determine whether the carrier or shipper was the principal offender, and in turn, "who was entitled to indemnity from the other." *Id.* at 446–47. In other words, the *Savage* court imposed its newly enunciated *Savage* rule to furnish "contribution in the extreme form of indemnity" and require that the carrier indemnify the shipper notwithstanding the fact that the shipper was negligent and partially at fault for the injuries and deaths of the third-party individuals. *Id.* at 447–48.

strict liability for a defect in the vehicle at the time of manufacture. 201 N.W.2d at 141. The manufacturer defendant filed a third-party complaint against the plaintiff's employer on the grounds of contribution or indemnification. *Id.* The plaintiff's employer filed a counterclaim against the manufacturer defendant for damages to the vehicle. *Id.* The trial court dismissed the manufacturer defendant's third-party complaint because any liability of plaintiff's employer was "exclusively under the provisions of the Workmen's Compensation Act." *Id.* The Minnesota Supreme Court reviewed whether "the third-party action against plaintiff's employer should have been dismissed." *Id*.

In analyzing the defendant manufacturer's contribution and indemnity claims, the court reiterated that the *Hendrickson* decision set forth the "exceptional and limited" situations in which a joint tortfeasor could recover indemnity from another tortfeasor. *Id.* at 142. Explaining that the defendant manufacturer's indemnification claim did not necessarily fit into one of those exceptions, the *Haney* court cited the *Savage* decision as an example of a case that suggests "indemnity is granted where there is a great disparity in the degree of fault of the parties" and that the court should "possibly reconsider granting indemnification where there is a great disparity in the degree of fault of the parties." 201 N.W.2d at 146 n.21 (citing *Savage*, 209 F.2d 442).[4] Yet, the court expressly declined to adopt the rationale for which it cited the *Savage* decision. *Id.* ("However, this court has not relied upon such rationale, and the Minnesota cases are equally explicable by the more specific principles stated above.")

---

[4] As explained above, the *Savage* court utilized what became the *Savage* rule to hold the carrier as primarily liable as a result of the "doctrine of last clear chance" and, as such, to require that the carrier indemnify the shipper. 209 F.2d at 446–48.

7

**C.  MINNESOTA'S COMPARATIVE FAULT STATUTORY SCHEME**

In 1969, Minnesota adopted its comparative fault statutory scheme, which is codified at Minn. Stat. § 604.01. Subdivision 1 provides that:

> Contributory fault does not bar recovery in an action by any person or the person's legal representative to recover damages for **fault** resulting in death, in injury to person or property, or in economic loss, if the contributory fault was not greater than the fault of the person against whom recovery is sought, but any damages allowed must be diminished in proportion to the amount of fault attributable to the person recovering. The court may, and when requested by any party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of fault attributable to each party and the court shall then reduce the amount of damages in proportion to the amount of fault attributable to the person recovering.

Minn. Stat. Ann. § 604.01, subd. 1 (emphasis added).

Subdivision 2 provides the following definition of "fault:"

> "Fault" includes acts or omissions that are in **any measure** negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty**, unreasonable assumption of risk not constituting an express consent or primary assumption of risk**, misuse of a product and unreasonable failure to avoid an injury or to mitigate damages, and the defense of complicity under section 340A.801. Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault. **The doctrine of last clear chance is abolished**.

Minn. Stat. Ann. § 604.01, subd. 2 (emphases added).

Since the adoption of Minnesota's comparative fault system, Minnesota "has rejected or significantly limited other such absolute tort doctrines that increase 'the likelihood of unfairness' and has opted for a comparative fault framework that 'contemplates justice for all parties.'" *Senogles v. Carlson*, 902 N.W.2d 38, 48 (Minn. 2017) (quoting *Toetschinger v. Ihnot*, 250 N.W.2d 204, 208, 210 (Minn. 1977)). Indeed, the Minnesota Supreme Court has substantially limited the doctrines of assumption of

risk, last-clear-chance, and discovered peril. *Id.* (citing *Olson v. Hansen*, 216 N.W.2d 124, 127–28 (Minn. 1974) (discussing the limits of the assumption of risk-doctrine); *Koval v. Thompson*, 136 N.W.2d 789, 792 (Minn. 1965) (discussing limits of last-clear chance and discovered-peril doctrines)).

Describing *Hendrickson*'s indemnity Rule 4 as "a blunt instrument for reallocating responsibility for damages" because "[i]t shifts the entire loss from one culpable wrongdoer to another," the Minnesota Supreme Court discarded the doctrine of indemnity because it was in contravention of Minnesota's comparative fault scheme. *Tolbert v. Gerber Indus., Inc.*, 255 N.W.2d 362, 367 (Minn. 1977). *Id*. Construing what the Minnesota Supreme Court characterized as "Rule 4" of the *Hendrickson* case, the court stated that Rule 4 "concerns parties seeking indemnity who are without personal fault, but who nevertheless seek to avoid responsibility for the injury they have caused." *Id.* at 366–67. The court described the indemnity rule as an "all or nothing" rule because courts "still must award indemnity on an all-or-nothing basis" even if the indemnified party is culpable in wrongful conduct that contributed to injury. *Id.* at 367.

In comparing *Hendrickson*'s indemnity Rule 4 to "the related area of contributory negligence," the court observed that the Minnesota "legislature has abandoned the all-or-nothing approach of the common law by adopting a comparative negligence statute, Minn. Stat. § 604.01. Tortfeasors must now **accept responsibility for damages commensurate with their own relative culpability**." *Id.* (emphasis added). Because this doctrine of indemnity was an "equitable doctrine" as recognized in the *Hendrickson* decision, the Minnesota Supreme Court explained that it was "at liberty to ameliorate

9

the rigid common-law rules in keeping with legislative philosophy without an express statutory mandate." *Id.* at 367.

The *Tolbert* court, thus, overruled *Hendrickson*'s Rule 4. *Id.* In doing so, the Minnesota Supreme Court unequivocally rejected the rationale underlying the portion of the *Savage* decision regarding all-or-nothing doctrines like contribution, indemnity, and last clear chance. *Id.* at 367 n.10 (citing *Hendrickson*, 104 N.W.2d at 846). The court enunciated a new rule providing that "by limiting reallocation of loss between joint tortfeasors to contribution based upon relative fault, the more culpable tortfeasor will continue to bear a greater share of the loss, but at the same time his joint tortfeasor **will not continue to escape all liability as in the past**." *Id.* (emphasis added).

Recent Minnesota case law reflects that Minnesota courts continue to ensure that liability rules fall in line with Minnesota's comparative fault scheme. In its 2017 *Senogles* decision, the Minnesota Supreme Court rejected several of defendant's arguments that a "no-duty rule" should be recognized and applied to bar plaintiff's negligence claims. 902 N.W.2d at 48. The *Senogles* defendant was a landowner who argued that he did not owe a duty to a child entrant on his land when the child was injured by "dangers that are known or obvious." *Id.* at 47. Moreover, the defendant argued that the Minnesota Supreme Court should recognize a new rule that a "Minnesota landowner owes no duty of care to a child entrant if the child enters the land accompanied by a parent or guardian, no matter how foreseeable the harm." *Senogles*, 902 N.W.2d at 48.

The Minnesota Supreme Court rejected both arguments. First, the court reiterated Minnesota's longstanding law holding that "a possessor is liable to an invitee for harm caused by a known or obvious condition if the possessor should have 'anticipate the harm despite such knowledge or obviousness.'" *Id.* (quoting Restatement (Second) of Torts § 343A); *see also Gilmore v. Walgreen Co.*, 759 N.W.2d 433, 435 (Minn. 2009) (recognizing that commercial property possessor owed invitee duty to warn or to take other reasonable steps to protect invitee against known or obvious condition). Second, the court declined defendant's request and reasoned that such an all or nothing "blanket rule" would undermine both the Minnesota Supreme Court's foreseeability jurisprudence, as well as Minnesota's system of comparative fault. *Id.* (citing Minn. Stat. § 604.01, subd. 1).

Additionally, as recent as 2019, the Minnesota Supreme Court refused to extend an "all or nothing" rule of primary assumption of risk to the sport of recreational downhill skiing and snowboarding. *Soderberg v. Anderson*, 922 N.W.2d 200, 205 (Minn. 2019). The court explained that primary assumption of the risk[5] "completely bars a plaintiff's claim because it negates the defendant's duty of care to the plaintiff[.]" *Id.* at 203. As a result, it is not part of the calculation of comparative fault and is severely circumscribed to "limited circumstances." *Id.* Because the doctrine can completely bar claims, the Minnesota Supreme Court was "loathe to extend the doctrine . . . to yet another activity"

---

[5] Primary assumption of the risk is a doctrine distinct from secondary assumption of the risk. The Minnesota Legislature unequivocally excluded the doctrine of "express consent or primary assumption of risk" from the definition of "fault" while subsuming other doctrines of "unreasonable assumption of risk[,]" such as secondary assumption of the risk, as part of the comparative fault calculation. Minn. Stat. § 604.01, subd. 1a.

11

and that recent Minnesota case law "reflects that reluctance." *Id.* at 205. The court observed that the "nationwide trend has been toward the abolition or limitation of the common-law doctrine of implied primary assumption of risk[,]" including "modifying the defense []to bring it in line with the doctrine of comparative contributory negligence.[]"[6] *Id.* at 205–06 (collecting cases) (internal quotations omitted).

### III.     ANALYSIS

The Court holds that the *Savage* rule does not apply to the instant case. As a preliminary matter, the Minnesota Supreme Court has never cited the *Savage* decision for the proposition that the *Savage* rule applies when the damage caused by either a shipper or carrier's negligence is the personal injury of the carrier, as opposed to damage to the transported goods. More importantly, however, the *Savage* rule was intertwined with doctrines of last clear chance, contributory negligence, and indemnity—all-or-nothing liability approaches that have been rejected by both the Minnesota Supreme Court and Minnesota's Legislature.

Immedia's reliance on *Tierney v. Arrowhead Concrete Works, Inc.*, 791 N.W.2d 540 (Minn. Ct. App. 2010), for the proposition that "[c]ourts applying Minnesota law today all apply the *Savage* rule" is unavailing. The *Tierney* decision is wholly unrelated

---

[6] Indeed, for jurisdictions that have adopted comparative negligence schemes, there has been a "nationwide trend away from adherence to an 'all or nothing' rule such as contributory negligence in favor of the shared fault approach of comparative negligence[, which] has had a spillover effect in related areas." *Davenport v. Cotton hope Plantation Horizontal Prop. Regime*, 482 S.E.2d 569, 571 (S.C. Ct. App. 1997), *aff'd as modified*, 508 S.E.2d 565 (S.C. 1998). Harsh all-or-nothing doctrines like last clear chance, contributory negligence, and primary assumption of the risk "have generally disappeared under comparative negligence." *Id.* (citing Guido Calabresi & Jeffrey O. Cooper, *New Directions in Tort Law*, 30 Val. Univ. L. Rev. 859, 868, 872, 876–77 (1996); W. Page Keeton et. al., Prosser and Keeton on the Law of Torts § 67, 471–73, 477–78 (5th ed. 1984)).

to whether the *Savage* rule applies; indeed, a citation to the *Savage* decision does not appear in the opinion. Similarly, Imedia's reliance on *Jenkins v. Immedia, Inc.*, No. 62-cv-11-5524, 2012 WL 7874431, at *3 (Minn. D. Ct. (Aug. 7, 2012) is unpersuasive. The *Jenkins* court is the court that stayed Plaintiff's Minnesota action pending resolution of the instant action and it provided no analysis as to why the *Savage* rule applied to Plaintiff's claims or was compatible with Minnesota's comparative fault statute.[7] (Doc. # 319-1 at 72–73.) These cases, thus, do not persuade the Court that the Minnesota Supreme Court would apply the *Savage* rule to Plaintiff's claims against Immedia.[8]

Minnesota case law construing the comparative fault statute also evinces that the *Savage* rule should not apply to Plaintiff's claims because such an application would undermine Minnesota's comparative fault scheme. The purpose of Minnesota's comparative fault scheme was to replace harsh tort doctrines that increase "the likelihood of unfairness" with a system that "contemplates justice for all parties." *Senogles*, 902 N.W.2d at 48 (internal citations omitted). Since Minnesota's comparative fault statute became law, the trend in Minnesota case law reveals that Minnesota and its courts have abolished, substantially limited, or shown a reluctance to extend "blunt"

---

[7] The *Jenkins* court also determined that Immedia owed "a duty to use reasonable care for [Plaintiff's] safety, which encompassed a duty to not "place [Plaintiff] in a position of danger which created a foreseeable risk of injury to him" and a "duty to warn Plaintiff of the danger of working in a pinch point, to direct him to a safer parking location." (Doc. # 319-1 at 72–73.)
[8] Moreover, Plaintiff's Third Amended Complaint sets forth a plausible claim for punitive damages. (Doc. # 378 at 14.) Plaintiff's claim for punitive damages adds an additional layer of intent to the conduct that was not before the *Savage* court. Plaintiff has alleged that the evidence will show that Immedia "acted with deliberate disregard" or with "deliberate indifference" to the rights or safety of others." (*Id.* at 12.) This alleged form of intentional misconduct is outside the peripheral view of the *Savage* rule.

doctrines that impose all-or-nothing liability rules. *Senogles*, 902 N.W.2d at 48 (collecting cases); *Tolbert*, 255 N.W.2d at 367; *Soderberg*, 922 N.W. at 205–06.

Additionally, the Minnesota Legislature expressly abolished some of these doctrines (last clear chance) and subsumed others into the comparative fault equation (unreasonable assumption of the risk). Minn. Stat. § 604.01, subd. 1a. The Minnesota Supreme Court has respected the Minnesota Legislature's decision to abandon these all-or-nothing approaches and construed the comparative fault statute to prevent tortfeasors from continuing to "escape all liability as in the past" and to ensure that they are held responsible "for damages commensurate with their own relative culpability." *Tolbert*, 255 N.W.2d at 366–67.

In the instant case, Immedia seeks to use the *Savage* rule to bar Plaintiff's claims "in whole or in part." (Doc. # 373 at 30.) As discussed above, Immedia contends that the *Savage* rule applies to **all** of the misconduct alleged by Plaintiff. (Doc. # 397 at 3–4; Doc. # 399 at 6–7.) As such, Immedia is not merely requesting that the Court apply the *Savage* rule to apportion duties. To the contrary, Immedia's requests this Court to apportion all-or-nothing liability based on Plaintiff's alleged duties under the *Savage* rule. *See* 209 F.2d at 446–47. Immedia avers that, if Plaintiff's injuries were caused by an obvious defect in Immedia's loading, packing, or securement of the cargo, then regardless of Immedia's other forms of misconduct, Immedia's liability is absolved by the *Savage* rule.[9] This is consistent with Immedia's previous argument that "*Savage* and

---

[9] *See* Def.'s Proposed Non-Stipulated Jury Instruction ("A shipper, or a person or entity involved in preparing cargo for shipment or in loading the cargo, may be liable for their negligence in

the federal regulations apply here and require the conclusion that **only** Plaintiff bore the duty to prevent this accident" and that the *Savage* doctrine "precludes liability on the part of Immedia." (Doc. # 319 at 7 (emphasis added).)

Put differently, similar to the *Soderberg* landowner's argument, Immedia argues that Plaintiff's claims are completely barred because the *Savage* rule negates Immedia's duty of care to Plaintiff. But the Minnesota Supreme Court has already rejected the functional equivalent of Immedia's contention by refusing to extend the all-or-nothing liability doctrine of primary assumption of the risk and declining to recognize a new "no-duty" rule. *Soderberg*, 922 N.W.2d at 205. Immedia's requested application of the *Savage* rule would constitute an all-or-nothing liability rule between a shipper and carrier regardless of the negligence or fault of the shipper. (Doc. # 397 at 3.)

That application does not comport with the purpose of Minnesota's comparative fault framework" that "contemplates justice for all parties." *Senogles*, 902 N.W.2d at 48 (internal quotations omitted). Indeed, the *Savage* rule is not compatible with Minnesota's comparative fault scheme by which it abolished the doctrine of last clear chance—the same doctrine that the *Savage* court relied upon in applying the *Savage* rule to conclude that the carrier was principally at fault, thereby absolving the shipper according to equitable principles of indemnity and contribution. Recent Minnesota case law emanates an understanding that all-or-nothing rules—serving as complete bars to liability for those who have responsibility—should be brought in line with comparative negligence. *Soderberg*, 922 N.W.2d at 205–06. The *Savage* rule, which has the

---

preparing or loading the cargo **only if** any defect in the way the cargo was loaded was concealed to the carrier or its driver.") (emphasis added).

15

inevitable effect of imposing all-or-nothing liability on carriers, must succumb to Minnesota's comparative fault framework so that the jury can have the opportunity to properly apportion a percentage of fault to Immedia for its alleged negligence if it so chooses.

### III. **CONCLUSION**

For the foregoing reasons, this Court concludes that the Minnesota Supreme Court would not apply the *Savage* rule to the instant case. Thus, it is ORDERED that the Savage rule will not apply in this case.

DATED: June 16, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge